SARTAIN, Judge.
Charles Gibson, the plaintiff-appellant, had been employed by the City of Baton Rouge as a uniformed policeman for a period of approximately two years prior to the series of events which resulted in this appeal. The chronology of the pertinent dates and Gibson’s allegations relative thereto are as follows:
In May of 1969, Gibson successfully completed tests and examinations in connection with an application for new em *363 ployment as a policeman for the City of Tucson, Arizona. He was later advised that November 3, 1969, was the starting date for the next training class of the Tucson Police Department. By letter of October 2, 1969, Gibson submitted his resignation, effective October 25, 1969, to Chief E. O. Bauer, Jr. of the Baton Rouge Police Department. On October 6, 1969, Chief Bauer notified Gibson that his resignation was accepted effective at the close of business October 25, 1969. The reason assigned for the resignation was that Gibson had obtained a better paying position in the field of law enforcement in Tucson. On October 14, 1969, Gibson was arrested and booked on criminal charges allegedly involving three other law officers and a female juvenile. On October 17, 1969, Chief Bauer wrote Gibson, suspending him from the Baton Rouge Police Department effective October 17, 1969, and “. until further notice . . .” The suspension was based on Section 350 of the Baton Rouge Police Department Rules and Regulations, which reads as follows:
“Any member of the department who is officially charged with any crime will be immediately suspended until he is either exonerated or found guilty of such crime. If such member is convicted of said crime, he will immediately be dismissed. Where the circumstances warrant, disciplinary action may be taken without regard to the result of criminal trials.” (Tr. 55).
On November 3, 1969, appellant appealed Chief Bauer’s action in suspending him to the defendant-appellee, Municipal Fire and Police Civil Service Board of the City of Baton Rouge. This was a proper and timely procedure by Gibson. Appellee took no action at that time concerning the appeal but wrote a letter to Gibson, advising that his letter of appeal would be “. . . placed on file . . . until such time as the criminal charges resulting from your arrest are disposed of by District Court.” (Tr. 12).
On November 26, 1969, bills of information were filed by the District Attorney of the Parish of East Baton Rouge against Gibson and three other persons, charging them with violation of L.R.S. 14:134(1) (malfeasance) and L.R.S. 14:80 (carnal knowledge of a juvenile). On October 29, 1971, motions to quash each of the bills of information were sustained by the Nineteenth Judicial District Court; and all criminal charges against Gibson were dismissed. This action was affirmed by the Louisiana Supreme Court on March 27, 1972.
On December 14, 1972, Gibson again requested the Board to act upon his appeal. He asked for rescission of his suspension, reinstatement as a police officer, and payment of back salary. On January 10, 1973, the Board held a hearing and voted only to confirm that Gibson had resigned from the Baton Rouge Police Department effective October 25, 1969; this, according to Gibson’s contention, having the effect of taking no action at all on his appeal. Gibson contends that Section 350 of the Baton Rouge Police Department Rules and Regulations, supra, coupled with the decision of the Secretary of the Board under date of November 3, 1969, advising[1] him that his application for appeal would noc be considered until such time as there had been a disposition of the criminal charges pending against him had the effect of revoking his request for resignation, citing as authority therefor McQuillin, Municipal Corporations, § 12.268f which reads as follows:
“§ 12.268f.--Reinstatement after resignation.
“Generally there can be no reinstatement after a voluntary resignation. The resignation cannot be withdrawn, except where such withdrawal and restoration to a reinstatement list are authorized. It has been held that if an officer removes an employee for cause, he cannot rescind the order and accept the resignation of the employee, and thus make him eligible to reappointment; nor in such case has *364 the civil service commission power subsequently to reinstate such employee, and give him an appointment in another city department. One who had resigned was not permitted, without exhausting his administrative remedies before the civil service commission, to maintain an action to have the court rescind and cancel his resignation and direct his reinstatement. Reinstatement may be ordered, however, where the resignation was withdrawn before its acceptance by the proper officer, or the resignation was secured by duress. But the resignation of a police officer under a veiled threat of criminal prosecution has been deemed not to have been under duress. * * *”
It is appellant’s further contention that the refusal of the Board to act on his appeal was contrary to his rights under Louisiana Constitution Article 14, Section 15.1. In the disposition of this cause the trial judge, in his written reasons for judgment, stated:
“It is plaintiff’s contention that he withdrew his resignation between October 17 and 25, 1969. It is also maintained by plaintiff that the suspension prevented his resignation from ever becoming effective. It is argued that Article 14, Section 15.1, Subsection 30(15) (b) [Subsection 30(b)] Louisiana Constitution of 1921 prevents one in a civil service position from resigning while being disciplined. Therefore, plaintiff alleges that the Board’s decision was without cause or good faith and therefore it must be reversed. If plaintiff did effectively withdraw his resignation or if the Constitution as cited above does prevent one under order of suspension from resigning, then plaintiff would be correct that the Board’s action was without cause.
“Plaintiff bases his claim that he revoked his resignation on an alleged telephone conversation with Chief Bauer. In this conversation, Bauer was supposed to have stated that the letter of resignation submitted by plaintiff was void due to the fact that the suspension preceded the effective date of the resignation. This claim is supported by an affidavit by one Clyde Freeman who stated that he overheard the conversation on an 'amplification device’ in plaintiff’s home.
“As evidence in opposition, Chief Bauer denied that any such telephone conversation took place. Also introduced in opposition were work sheets indicating that after October 25, 1969, Gibson was no longer considered an employee of the Police Department. This was indicated by the fact that after this date, the plaintiff’s name was scratched from the work sheets. It would appear that plaintiff’s resignation had been accepted October 6, and the evidence indicating a revocation was apparently not persuasive. The Board’s finding that plaintiff’s resignation was firm was obviously not without basis. Therefore it should not be disturbed.
“The only other issue is whether the Constitution prevents a civil service employee under order of suspension from resigning. The section which plaintiff relies upon [Article 14, Section 15.1, paragraph 30(15) [30, subd. a(15)]] provides for certain instances for which disciplinary action may be taken. One of these instances is the development of any defect or physical condition which precludes the employee from performing the duties of his position. It is then subsequently provided that ‘Nothing contained herein shall prevent any employee who is physically unable to perform the duties of his position from exercising his right of voluntary retirement under any applicable law.’ Plaintiff reasons that the right of voluntary retirement is thus restricted to those suspended due to a physical infirmity. As a result, plaintiff in the instant case would not have been permitted to resign during his suspension. It is argued by plaintiff that the rationale behind this rule is the ‘important interests the state and public have *365 in requiring the complete performance of the disciplinary sanction without the benefit of retirement.’ However, as defendant points out, it would appear that the plaintiff has confused ‘retirement’ with ‘resignation’. It would indeed be reasonable to deny one under order of suspension the benefit of retirement. But to prevent one from resigning so that he may avoid the full effect of disciplinary sanction is not logical when the most detrimental sanction the Board may issue is dismissal. This is, of course, aside from any constitutional problem that might arise as to involuntary servitude.
“All factors considered, it cannot be said that the Board’s action was without cause or not in good faith. As a result, the action of the Municipal Fire & Police Civil Service Board of the City of Baton Rouge is affirmed.”
Our perusal of the record clearly supports the findings of fact and conclusions of law reached by the trial judge.
The record is completely devoid of any credible evidence that the appellant either endeavored or effectuated the withdrawal of his resignation. The affidavit offered in evidence as corroborating his discussion with the Chief of Police relative to the withdrawal of his resignation is clearly inadmissible and rather self-serving. While it is unfortunate that the series of events which subsequently followed his letter of resignation precluded his accepting employment in Arizona, it was not the fault of his superiors nor of the appel-lee-board. The delay in giving him a hearing cannot be construed as vitiating his resignation. While it might have permitted him to reapply for employment as a policeman, he did not seek that relief nor did he urge before the Board that he had made application for re-employment with the Police Department of the City of Baton Rouge.
The public policy factor in not permitting a police officer to resign and thus avoid disciplinary action is not applicable to the situation here. The burden clearly rested with appellant to show that he withdrew his resignation and was, in fact, reinstated to his former position subject to his suspension. Appellant does not aver that following his acquittal on the criminal charges he sought re-employment with the police department. To the contrary, he clearly contends that a resignation once submitted is terminated by operation of law when prior to the effective date of the resignation he is suspended for what appears to be valid grounds at the time of the suspension.
We do, however, think that he is entitled to compensation from the date of his suspension, October 17, 1969, to the date of his resignation, October 25, 1969. This matter is remanded to the district court for the purpose of receiving evidence as to the value of his wages for this period.
Accordingly, for the above and foregoing reasons, the judgment of the district court is affirmed insofar as it upheld the decision of the Municipal Fire & Police Civil Service Board of the City of Baton Rouge in its determination that the appellant had resigned effective October 25, 1969, but is amended to decree appellant entitled to receive wages for the period October 17, 1969 to October 25, 1969. All such costs as are permitted by law are assessed against the defendant-appellee.
Affirmed in part, amended and remanded.
WATSON, J., dissents and assigns written reasons.

. The deduction of other earnings is required by LSA-R.S. 49:113. Higgins v. Louisiana State Penitentiary, Dept. of Inst., 245 La. 1009, 162 So.2d 343 (1964); LeBlanc v. New Orleans Police Department, 231 So.2d 568 (La.App. 4 Cir. 1970), writ refused 255 La. 914, 233 So.2d 563 (1970).